Argued and submitted February 10, reversed and remanded April 9, 1986

## STATE OF OREGON,
*Appellant,*

*v.*

## RUSTY DALE JOHNSON,
*Respondent.*

(44041; CA A37510)

717 P2d 187

Jeff Bennett, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief was Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Roy E. Elicker, II, Metropolitan Public Defender, Oregon City, argued the cause and filed the brief for respondent.

Before Joseph, Chief Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant was charged with driving under the influence of intoxicants. The state appeals a trial court order suppressing evidence of blood test results. No question was raised by defendant in the trial court regarding the voluntariness of his consent to the withdrawal of his blood. The issue is whether a warrant was required to test the blood. We conclude that no warrant was required, and we reverse and remand.

Deputy Sheriff Bailey investigated an automobile accident. He learned that the driver had been taken to the hospital. Bailey went to the hospital where he met defendant, who acknowledged that he was the driver. Bailey read him *Miranda* warnings. Defendant said that he understood his rights and that he was willing to talk about the accident.

Bailey asked defendant if he would give a blood sample. He then read a "consent for test for intoxicants" form to defendant. The form stated in part:

> *"PATIENT CONSENT*
>
> "I voluntarily consent to have a sample of my blood withdrawn * * * for the purpose of testing for alcohol or controlled substances to determine whether or not I am under the influence of alcohol or controlled substances."

Defendant read the form and then he signed it. After the blood was drawn, it was sent to the state crime lab for testing. No warrant was obtained to test it.[1]

Defendant moved to suppress the blood and the test results on the ground that the seizure at the hospital and the subsequent testing were done without a warrant.[2] The trial

---

[1] Testing is a form of search. *State v. Lowry,* 295 Or 337, 345, 667 P2d 996 (1983).

[2]

"No law shall violate the right of the people to be secure in their persons, papers, houses, and effects, against unreasonable search, or seizure * * *." Or Const, Art 1, § 9.

Defendant grounded his motion to suppress on the Oregon Constitution only. This case is distinguishable from *State v. Langevin,* 78 Or App 311, 715 P2d 1355 (1986), where blood was drawn from the defendant while he was *unconscious. Langevin* relied on *former* ORS 487.835(2) (now ORS 813.140). On the authority of *State v. Lowry, supra* n 1, and *State v. Westlund,* 75 Or App 43, 705 P2d 208, *rev allowed* 300 Or 332 (1985), we held that a warrant was required to test the blood. In this case, defendant consented to the taking and testing of his blood. Therefore, no warrant was required to test.

court found in part:

> "1. On February 15, 1985, defendant was contacted at Meridian Park Hospital by Deputy Bailey of the Clackamas County Sheriff's Office.
>
> "2. Deputy Bailey advised defendant of his *Miranda* rights and requested that he consent to the taking of a blood sample. Deputy Bailey prepared and defendant signed the consent to having his blood drawn for the purpose of testing.
>
> "3. Deputy Bailey did not discuss with defendant the testing of the blood sample."

The court ordered:

> "[D]efendant's motion to suppress the seizure of the blood sample from Meridian Park Hospital is denied;
>
> "* * * [D]efendant's motion to suppress evidence of the testing of the blood sample is allowed."

The issue is whether the scope of defendant's consent extended to the testing of his blood. We conclude that it did.

Defendant contends that, once the state had seized the blood, a warrant was necessary to test it. He argues:

> "Thus, though the seizure of the defendant's blood was allowed by the defendant through the hospital consent form, the subsequent further testing of his blood was a 'search' and a further intrusion into his privacy. As such, it must be justified by a warrant. Under the cited case law, once the blood had been seized the investigation reached a logical stopping point and the need to proceed without a warrant stopped."

He relies primarily on *State v. Lowry, supra* n 1, and *State v. Westlund, supra* n 2.

■ ■ Searches conducted without a warrant are *per se* unreasonable, subject to a few specifically established and well-delineated exceptions. One of those exceptions is that for consent searches.[3] *State v. Kennedy,* 290 Or 493, 500, 624 P2d 99 (1981). If defendant's consent was validly given to the taking and testing of his blood, no warrant was needed. Bailey testified:

> "Q. For the purpose of your discussion between you and Mr. Johnson regarding the blood draw am I correct that you

---

[3] It is more accurate to say that the Constitution is not implicated when a valid consent is given.

filled out the top part of this form and you read him this paragraph and its your testimony that Mr. Johnson signed it? Does that cover your interaction with Mr. Johnson regarding the blood draw?

"A.    Basically I explained the form to him — said we were going to draw the blood to test the alcohol in his blood system. He read and looked at the form. He agreed to it—signed the form. That's basically what happened."

The trial court found as a fact that defendant consented "to having his blood drawn *for the purpose of testing.*" (Emphasis supplied.) The form clearly stated that the purpose of drawing the blood was to test for the presence of alcohol or controlled substances. Further, defendant was expressly told that Bailey's intent was "to test the alcohol in his blood system." Defendant read the form and signed it. The form was general and unqualified. It did not restrict consent to the seizure of his blood. To the contrary, it consented to the withdrawal of blood for the express purpose of testing. To say that defendant's consent was insufficient to encompass testing is simply wrong. No search warrant was necessary to test the blood.

Reversed and remanded.